# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

EDDIE CARTER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 5:17-cv-60

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Craig R. Petersen ("the ALJ" or "ALJ Petersen") denying his claim for a period of disability and disability insurance benefits. (Doc. 1.) Plaintiff urges the Court to reverse the Commissioner's decision and award him benefits, or in the alternative, for the decision to be reversed and remanded for further consideration. (Doc. 18.)[1] Defendant asserts the Commissioner's decision should be affirmed. (Doc. 19.) For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

## **BACKGROUND**

On April 10, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on November 14, 2013. (Doc. 9-2, p. 20.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely

---

[1] Plaintiff untimely moved for a second extension of time to file his Brief. (Doc. 15.) The Court ordered Plaintiff's counsel to show cause why the Court should grant her untimely and second Motion for Extension of Time. (Doc. 16.) Plaintiff's counsel responded that she was responsible for the oversight and untimely Motion, and she filed an out-of-time Brief. (Docs. 17, 18.) Accordingly, after careful consideration and to avoid undue prejudice to Plaintiff for his counsel's error, the Court **GRANTS** Plaintiff's Second Motion for Extension, (doc. 15), and considers his Brief timely filed.

request for a hearing. On March 23, 2016, ALJ Petersen held a video hearing at which Plaintiff, represented by counsel, appeared and testified in Waycross, Georgia, while the ALJ presided over the hearing in Savannah, Georgia. Kenneth L. Bennett, a vocational expert, also appeared at the hearing. (Id.) ALJ Petersen found that, from his alleged onset date through the decision date, April 28, 2016, Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq*. (Id. at pp. 20, 28–29.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at pp. 2–3.)

Plaintiff, born on September 2, 1969, was forty-six (46) years old when ALJ Petersen issued his final decision. (Id. at p. 27.) Plaintiff has at least a high school education and is able to communicate in English. (Id.) Further, he has relevant past work experience as a concrete vault maker, blending machine operator, industrial cleaner, and front end loader operator. (Id.)

## DISCUSSION

### I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person is disabled. 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.; see also 20 C.F.R. § 404.1520(b). If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments as defined by the "severity regulation." Id. § 404.1520(c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is considered severe, then the evaluation proceeds to Step Three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. Id. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At Step Four, a determination is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. Id. § 404.1520(e); Yuckert, 482 U.S. at 141; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013) (per curiam). A claimant's RFC "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Stone, 503 F. App'x at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is

unable to perform his past relevant work, the final step of the evaluation process determines whether he is able adjust to other work in the national economy, considering his age, education, and work experience. Id. § 404.1520(f), (g); Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, ALJ Petersen followed this sequential process to determine that Plaintiff has not engaged in substantial gainful activity since November 14, 2013, the alleged onset date. (Doc. 9-2, p. 22.) At Step Two, the ALJ determined that Plaintiff's bilateral hip degenerative joint disease status post hip replacement, lumbar spine degenerative disc disease, and obesity were considered "severe impairments" under the "severity regulation." (Id. (citing 20 C.F.R. § 404.1520(c)).) At the next step, the ALJ determined that none of Plaintiff's medically determinable impairments or combination of impairments met or medically equaled a listed impairment under the Regulations. (Id. at p. 23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) Notably, the ALJ expressly considered relevant portions of Listing 1.02 and found that recent physical examinations showed Plaintiff capable ambulation such that his impairments did not meet the Listing criteria. (Id.)

In determining Plaintiff's RFC, ALJ Petersen found that he could perform a considerably limited range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (Id. at pp. 23–27.) The ALJ limited Plaintiff's sedentary work profile as follows: Plaintiff can stand and/or walk for two hours, and can sit up to six hours, of an eight-hour workday with normal breaks; Plaintiff must be able to alternate between sitting and standing every hour; Plaintiff can push or pull up to ten pounds occasionally; Plaintiff can occasionally climb stairs or ramps, stoop, kneel, or crouch but can never climb ladders, ropes, or scaffolds, or crawl; Plaintiff can have no exposure to unprotected heights or other hazards and must avoid uneven surfaces; Plaintiff can occasionally

use foot controls and must use a device to ambulate to and from the work area; and finally, Plaintiff has no limitations regarding concentration, persistence, or pace and he has no social deficits. (Id. at p. 23.) ALJ Petersen determined that the evidence of record supported his decision to limit Plaintiff to sedentary work with additional postural and environmental limitations, along with accommodations to sit/stand and use a walking assistive device. (Id. at pp. 26–27.) At Step Four, the ALJ found Plaintiff unable to perform his past relevant work as a concrete vault maker, blending machine operator, industrial cleaner, and front end loader operator because these jobs exceeded the sedentary exertional level. (Id. at p. 27.) However, considering Plaintiff's age, education, work experience, and RFC, ALJ Petersen concluded at the fifth and final step that Plaintiff could perform occupations such as order clerk, call out operator, and surveillance monitor, all jobs compatible with Plaintiff's limited sedentary exertion ability which exist in significant numbers in the national economy. (Id. at pp. 27–28.)

## II.     Issues Presented

Plaintiff contends the ALJ erred at Step Three when he refused to find that Plaintiff met or equaled Listing 1.02A under the Regulations. (Doc. 18, p. 2.) Plaintiff also contends that the ALJ improperly discounted, without good cause, the opinion of Plaintiff's long-term treating physician, Dr. Susan Brickle. (Id.)

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for

that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a mere scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.    Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff did not Meet or Equal Listed Impairment 1.02A**

Plaintiff argues ALJ Petersen wrongfully concluded that his hip and spine impairments did not meet or medically equal a listed severe impairment at Step Three. (Doc. 18, pp. 12–13.) Plaintiff contends that his condition met Listing 1.02A because both of his knees had major joint dysfunction requiring bilateral hip replacement surgery on each knee and because he has difficulty walking effectively. (Id. at p. 13.) Plaintiff argues that the medical evidence of record documents his limited range of motion and need to use a cane or walker during the relevant period. Finally, Plaintiff asserts the ALJ erroneously found that he only used a cane minimally and walked without a limp. (Id.)

Defendant argues substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet Listing 1.02A. (Doc. 19, pp. 4–6.) In support, Defendant points to medical evidence which shows that, following his bilateral hip replacement surgery, Plaintiff only used a cane minimally, had a normal gait and range of motion, and had decreased pain. (Id. at p. 6.) Defendant also argues that Plaintiff has failed to carry his burden of showing his severe degenerative joint disease impairment meets all of the necessary criteria to qualify under Listing 1.02A's definition of inability to "ambulate effectively." (Id. at pp. 5, 6.)

A claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that his impairment meets or medically equals a listed impairment to be presumed disabled at Step Three. Sullivan v. Zebley, 493 U.S. 521, 530 (1990)); see Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (claimant bears the burden to establish the existence of his impairment). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Arrington

v. Soc. Sec. Admin., 358 F. App'x 89, 93 (11th Cir. 2009) (per curiam) (citing Sullivan v. Zebley, 493 U.S. at 530). Thus, to meet a listing, "a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted).

The ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding the ALJ implicitly found the claimant did not meet a listing because it was clear from the record that the ALJ had considered the relevant law and evidence). Furthermore, although the ALJ must consider the Listings in making his disability determination, he is not required to recite mechanically the evidence leading to his ultimate determination. Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 920 (11th Cir. 2015) (per curiam) (citation omitted).

To meet Listing 1.02A for "[m]ajor dysfunction of a joint" a claimant must show: (1) gross anatomical deformity, such as subluxation, contracture, or instability; (2) chronic joint pain and stiffness with signs of limited motion or other abnormal motion of the affected joint(s); (3) and findings on appropriate, medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s); with (4) involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle) resulting in the inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02A. A claimant's inability to ambulate effectively must have lasted, or be expected to last, for at least twelve months. Id. § 1.00B2a. An "inability to ambulate effectively" is further defined by the Regulations.

In pertinent part, they provide that a claimant's ambulation must be "extreme[ly] limit[ed]" such that the impairment "interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Id. § 1.00B2b(1). This generally means a claimant has "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. Conversely, effective ambulation is understood as the capability of "sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living" and of "travel[ing] without companion assistance to and from a place of employment." Id. § 1.00B2b(2). Thus, ineffective ambulation includes, for example, "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, . . . [and] the inability to carry out routine ambulatory activities, such as shopping and banking." Id. Moreover, being able to "walk independently about one's home without the use of assistive devices" is not by itself conclusive evidence of effective ambulation. Id.

Substantial evidence supports the ALJ's determination that Plaintiff's bilateral hip degenerative joint disease alone, or in combination with his lumbar spine degenerative disc disease and obesity, did not meet or equal a listed impairment and that Plaintiff failed to carry his burden in establishing the existence of a listed impairment under the Regulations. In attempting to carry his burden, Plaintiff points to his two hip replacement surgeries as proof that he has a major joint dysfunction characterized by gross anatomical deformity with a limited range of motion, as evidenced by the findings of several doctors as well as MRI and X-ray scans. (Doc. 18, p. 13.) Further, Plaintiff contends that he has an inability to ambulate effectively because, since his hip surgeries, he must still use a cane to walk and has exhibited a limp and

antalgic gait. (Id.) The Court's review of these records belie Plaintiff's uncited assertions. Moreover, recent medical evidence of record provides substantial evidence to support ALJ Peterson's determination that none of Plaintiff impairments met or medically equaled Listing 1.02A.

As Defendant noted, (doc. 19, p. 6), Plaintiff was capable of walking with only minimal use of a simple cane, without a limp or abnormal gait, approximately six weeks after his total hip replacement surgery in July 2014, (doc. 9-9, pp. 53, 55). Plaintiff also reported that his pre-surgery pain had subsided. (Id.) As of September 2014, three months after his surgery, Dr. J. Lex Kennerly reported that Plaintiff was "ambulatory" and only needed occasional use of a simple cane; Dr. Kennerly even encouraged Plaintiff to wean himself off his cane. (Id. at p. 58.) Further, ALJ Petersen correctly found that physical examinations of Plaintiff in late 2015 and early 2016 showed a normal gait and range of motion, with no sensory or motor deficits, and full 5/5 strength in his lower extremities.[2] (Doc. 9-10, pp. 72, 81, 104–05.) Finally, Dr. Brickle opined in March 2016 that Plaintiff was capable of ambulation without a hand held assistive device. (Doc. 9-11, p. 11.) Thus, there is no evidence, much less substantial evidence, that shows Plaintiff must use a walker or two canes to ambulate effectively. Although the Court is not unsympathetic to any difficulties Plaintiff may experience while walking, the evidence of record shows that he is not unable to ambulate effectively as contemplated by the Regulations.

In sum, Plaintiff fails to point to any specific instances in the record to meet his burden to establish that his severe impairments qualify under Listing 1.02A, and the Court finds substantial

---

[2] In addition, Plaintiff denied painful joints and musculoskeletal weakness, (doc. 9-10, p. 71), was discharged from a December 2015 emergency room visit as ambulatory, (id. at p. 87), and reported sweeping and moping prior to a January 2016 emergency room visit for chest pain, (id. at p. 104). Further, Plaintiff reported being able to help with some chores, to drive and go out alone, and to walk to check the mail. (Doc. 9-2, p. 24.) This evidence contradicts Plaintiff's implied claim that his ambulation is extremely limited and necessitates the use of a walker or two canes, as required under Listing 1.02A.

evidence in the record to support the ALJ's decision in this regard. Accordingly, the ALJ's determination that Plaintiff's bilateral hip degenerative joint disease status post hip replacement and other impairments did not meet or medically equal Listing 1.02A was proper, and Plaintiff's enumeration of error is without merit.

## V. Whether the ALJ Properly Discounted the Opinions of Plaintiff's Treating Physician, Dr. Brickle

Plaintiff argues ALJ Petersen failed to follow applicable regulations when only assigning little weight to Plaintiff's treating physician, Dr. Brickle's, medical source statement opinions. (Doc. 18, pp. 13–16; see also doc. 9-2, p. 26). Plaintiff also contends the ALJ lacked substantial evidence and good cause to discount Dr. Brickle's opinions. (Doc. 18, pp. 17–19.) On the contrary, Plaintiff asserts substantial evidence supports Dr. Brickle's discounted opinions. (Id.)

Defendant argues ALJ Petersen properly considered and weighed the opinions of Dr. Brickle when he only assigned them little weight. (Doc. 19, pp. 8–9.) Defendant contends that Dr. Brickle's opinions were inconsistent with both her own treatment records of him and Plaintiff's post-surgery treatment records. (Id. at pp. 9–10.) Further, Defendant asserts Dr. Brickle failed to cite medical evidence to support her conclusions, and thus, the ALJ correctly discredited Plaintiff's subjective complaints of disabling symptoms as the source of her opinions. (Id.) As such, Defendant contends the ALJ has substantial evidence and good cause to discount Dr. Brickle's opinions. (Id.)

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in

original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  The opinions of non-treating doctors, such as a one-time examiner, or from non-acceptable medical sources, such as a chiropractor, are not entitled to deference or special consideration.[3]  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (citations omitted).  However, "the law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241).  "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks."  Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013).  "For instance, when discounting a medical opinion, he should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record."  Id. (citing 20 C.F.R. §§ 404.1527(c) & 416.927(c)).  Thus, an ALJ is not obligated to agree with a medical opinion if the evidence of record tends toward a contrary conclusion.  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (citations omitted).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  Winschel, 631 F.3d at 1179 (citation omitted).  Failure to "clearly articulate the reasons for giving less weight to the

---

[3] A doctor is not a treating doctor if the claimant's relationship with the doctor arises from the claimant's need to obtain a report to support his claim for disability, rather than from the claimant's need for medical care.  20 C.F.R. § 404.1502 (2013).  The Court cites to the 2013 version of this Regulation because Plaintiff filed for benefits that year and this Regulation has recently undergone substantial revision with respect to treating physicians.  See 20 C.F.R. § 404.1502 (2018).

opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted). In this case, the Court finds ALJ Petersen properly considered and weighed Dr. Brickle's medical source statement opinions and that he had good cause to discount them.

> As recounted by the ALJ, Dr. Brickle opined in her medical source statement that:
>
> [Plaintiff] would need to lie down 2-3 times over the course of an 8-12 hour work shift. She also opined that he would be able to stand and walk less than 2 hours in an 8-hour day, and sit less than 6 hours in an 8-hour workday. She opined that he could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She opined that he could never climb, balance, kneel, crouch, crawl or stoop; that he must avoid even moderate exposure to extreme cold and heat and wetness; and that he must avoid all exposure to hazards. Lastly, she opined that he would miss work about three times per month due to his impairments.

(Doc. 9-2, p. 26 (citing doc. 9-11, pp. 10–13).) ALJ Petersen stated that he considered Dr. Brickle's opinions consistent with Social Security Ruling 96-2p requirements but gave them little weight for several reasons. (Id.) First, the ALJ found Dr. Brickle's opinions were largely based on Plaintiff's subjective complaints. Second, he found her assessment inconsistent with Plaintiff's treatment records, including findings subsequent to her assessment. Lastly, he found her assessment and the opinions contained therein inconsistent with her own treatment records. (Id.) These reasons are sufficient good cause under Winschel to discount Dr. Brickle's opinions despite her status as a treating physician.

Looking to the record, the Court finds substantial evidence supports the reasons put forth by the ALJ in discounting Dr. Brickle's opinions. In her medical source statement, Dr. Brickle limited Plaintiff because of his hip surgeries and because he "continues to have severe pain" generally and also has "severe pain in prolonged standing and prolonged sitting." (Doc. 9-11, pp. 11–12.) She also noted Plaintiff's "pain" was partly the reason he required environmental restrictions. (Id. at p. 13.) Beyond looking to Plaintiff's hip surgery and pain complaints, Dr. Brickle failed to support her conclusions with objective finding or evidence. Given that Plaintiff

13

reported doing well with improved pain levels following his surgery, the ALJ had substantial evidence to reject Dr. Brickle's reasoning. (See Doc. 9-9, p. 55 (noting that Plaintiff said, "Doc, the pain I had before my surgery is now gone!" and finding he could walk without a limp and with a good gait, but finding some generalized weakness).)[4]  Further, as described above, Dr. Kennerly's September 2014 examination, three months following Plaintiff's hip surgeries, found Plaintiff "doing well" with no pain and full range of motion and stated Plaintiff was "pleased with his hips and continues to improve." (Id. at pp. 57–58.)  In February 2015, Plaintiff reported that his preoperative hip pain was gone but complained of intermittent groin and lateral hip pain; however, Plaintiff failed to use the prescribed topical pain relief cream, which casts doubt on the veracity of his debilitating pain complaints when also considering Plaintiff's reported activities of sweeping, moping, caring for his needs without assistance, helping with laundry and dishes, taking his daughter to the park, going out of the house alone and driving, and playing cards. (Id. at p. 77; doc. 9-11, p. 3; doc. 9-2, pp. 24, 26.); see Solomon v. Comm'r, SSA, 532 F. App'x 837, 840 (11th Cir. 2013) (per curiam) (substantial evidence supports discounting a plaintiff's subjective complaints of pain where the plaintiff fails to take pain medication and testifies to engaging in activities inconsistent with severe pain) (citing 20 C.F.R. § 404.1529(c)(3)).  Thus, because the chief basis of Dr. Brickle's opinions, Plaintiff's subjective complaints of severe pain, lacks support and because her opinions are inconsistent with other evidence of record, ALJ Petersen has substantial evidence to give little weight to her opinions.

---

[4]  In addition, Plaintiff did not report debilitating hip or joint pain in his two emergency room visits in December 2015 and January 2016. (See Doc. 9-10, pp. 79–121 (Plaintiff reporting only chest pain and examination finding no musculoskeletal symptoms reported in January 2016).)  These reports also found Plaintiff had a normal range of motion in his upper and lower extremities with normal inspection and had 5/5 muscle strength without any motor or sensory deficits. (Id. at 81, 105.)  This evidence is inconsistent with Dr. Brickle's opinions and, as such, provides substantial support for ALJ Petersen's determination that her opinion was due little weight.

Moreover Dr. Brickle's own treatment records are inconsistent with her medical source statement opinions. For example, Dr. Brickle's physical examination in November 2015 found Plaintiff had a normal gait and normal sensory, motor, and strength responses. (Doc. 9-10, p. 72.) These findings were bolstered by subsequent emergency room visit examinations. (See id. at pp. 81, 105.) In addition, ALJ Petersen's determination to give little weight to Dr. Brickle's opinions was supported by the findings of the State Agency medical consultants, Drs. Roy Rubin and Arthur Schiff. After reviewing the medical evidence of record prior to Plaintiff's hip replacement surgery, Dr. Rubin opined that Plaintiff could stand or walk for two hours and sit for up to six hours of an eight-hour workday and that he would need additional postural and environmental limitations, including the needs for an assistive device for walking. (Doc. 9-3, pp. 5–9.) Thereafter, Dr. Schiff reviewed Plaintiff's post-surgery record and reached a similar conclusion as to Plaintiff's limitations in the workplace. (Id. at pp. 14–22.) ALJ Petersen determined their opinions were consistent with Plaintiff's longitudinal treatment history and accorded them great weight. (Doc. 9-2, pp. 25–26.) These reviewing physician opinions, when combined with the other medical evidence of record which was inconsistent with Dr. Brickle's medical source statement opinions, provide substantial evidence to discount her opinion. See Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).

In sum, the Court finds ALJ Petersen's had good cause, supported by substantial evidence, in the form of inconsistent medical records and contrary opinions, to afford little weight to Dr. Brickle's largely unsupported opinions. See Winschel, 631 F.3d at 1179 ("Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"). While Plaintiff clearly disagrees with the

ALJ's assessment of the medical evidence with respect to Dr. Brickle's medical source statement, it is not the province of this Court to decide facts anew or reweigh the evidence in a Social Security appeal. Therefore, because there was more than a mere scintilla of evidence supporting the ALJ's decision to discount Dr. Brickle's opinions, Plaintiff's enumeration of error on this count is also without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation

directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 30th day of August, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA